**Inquiry into the Conduct of
The Honorable George
W. PEREZ.**

No. A12–2118.

Supreme Court of Minnesota.

Jan. 15, 2014.

Douglas A. Kelley, Steven E. Wolter, Kelley, Wolter & Scott, P.A., Minneapolis, MN, for the Board on Judicial Standards.

Frederick E. Finch, Bassford Remele, Minneapolis, MN, for The Honorable George W. Perez.

## OPINION

PER CURIAM.

This proceeding arises from a complaint filed by the Minnesota Board on Judicial Standards ("Board") against the Honorable George W. Perez, former judge of the Minnesota Tax Court, alleging violations of the Code of Judicial Conduct and Minnesota law. Following a hearing, a three-member panel ("Panel") found that Judge Perez failed to issue decisions in a timely manner, made false certifications, and made false statements in his decisions, in violation of Minn.Stat. § 271.20 (2012), Rules 1.1 and 1.2 of the Code of Judicial Conduct, and Canons 2A and 3A(1) of the 2008 Code of Judicial Conduct.[1]

The Panel recommended that Judge Perez be censured, suspended without pay for 9 months, and prohibited from serving as chief judge for the remainder of his current term. The Panel also suggested additional requirements to ensure timely decisions in the future. Shortly after the Panel issued its findings, the Minnesota Senate refused to confirm Judge Perez's appointment, thereby ending his judgeship immediately. *See* Minn.Stat. § 271.01 (2012) (providing that tax court judges are "appointed by the governor ... with the

---

1. We substantially revised the Code of Judicial Conduct, effective July 1, 2009. The version of the Code of Judicial Conduct in effect before the 2009 amendments, which we will refer to as the 2008 Code of Judicial Conduct, applies to the misconduct that occurred before July 1, 2009.

advice and consent of the senate").[2] Both Judge Perez and the Board appealed the Panel's decision. Judge Perez also filed a motion to vacate the Panel's decision and to dismiss the entire matter as moot.

We agree with the Panel that the Board has proven by clear and convincing evidence that Judge Perez failed to release opinions in compliance with Minn.Stat. § 271.20, falsely certified that he was in compliance with Minn.Stat. § 271.20, and made false statements in his orders regarding the date cases were submitted for decision, in violation of Minn.Stat. § 271.20, Rules 1.1 and 1.2 of the Code of Judicial Conduct, and Canons 2A and 3A(1) of the 2008 Code of Judicial Conduct. Based on the misconduct and the unique facts of this case, we conclude that the appropriate discipline is public censure, referral to the Wisconsin Office of Lawyer Regulation, and supervision by this court of any application for admission to the Minnesota Bar that Judge Perez may file in the future.

## I.

The Board issued a formal complaint against Judge Perez in November 2012. The complaint alleged four counts: (1) Judge Perez falsely certified on numerous occasions that he had no cases pending longer than 3 months after submission (Count I); (2) Judge Perez refused to accept new case assignments (Count II); (3) Judge Perez made false representations to the Board during its investigation (Count III); and (4) Judge Perez had a pattern of delay in issuing case decisions (Count IV). The chief justice appointed a three-member fact-finding panel to conduct a hearing on the Board's allegations. *See* Rule 8(b), Rules of Board on Judicial Standards

(RBJS) (providing for appointment of a hearing panel).

Following an evidentiary hearing, the Panel issued findings of fact and a recommendation for discipline. The Panel's findings are largely undisputed by the parties. The Panel found that Judge Perez was first appointed to the Minnesota Tax Court in December 1997 and was subsequently reappointed in 1999, 2005, and 2011. Judge Perez became the chief judge of the tax court in 2001 and continued in that role until December 2012. Judge Perez is not admitted to practice law in Minnesota, but he is admitted to practice in Wisconsin.

With respect to the primary allegation in the Board's complaint—the allegation in Count IV that Judge Perez took more than 3 months to issue decisions—the Panel found that the Board sustained its burden of proof. The complaint alleges that Judge Perez violated Minn.Stat. § 271.20, which provides:

> All questions of fact and law and all matters submitted to the judges of the Tax Court shall be disposed of and their decision filed with the court administrator of the Tax Court within three months after such submission, unless sickness or casualty shall prevent, or the time be extended by written consent of the parties. No part of the salary of any judge of the Tax Court shall be paid unless the voucher therefor be accompanied by the judge's certificate of full compliance with the requirements of this section. A Tax Court judge shall devote full time to the duties of the office and shall not engage in the practice of law.

The Panel found that Judge Perez engaged in a persistent pattern of noncompli-

---

**2.** While Judge Perez is no longer a sitting judge in Minnesota, we will refer to him as Judge Perez because the misconduct at issue occurred while he was a judge of the Minnesota Tax Court.

ance with the statute's deadline for deciding cases. According to the findings, the tax court generally used a "case-tracking log" to keep track of each pending case. A tax court paralegal maintained the case-tracking log. She calculated the due dates of decisions to be 3 months after the last case event or last document filed. Beginning at least as early as 1998, Judge Perez began a pattern of scheduling post-trial conferences for the purpose of seeking extensions of the statutory decision deadline. At Judge Perez's direction, the paralegal would change the decision deadline to 3 months after the last conference call. It became the practice to extend the deadline in Judge Perez's cases after all post-trial conferences.

At the hearing, Judge Perez contended that the deadline in Minn.Stat. § 271.20 is extended any time there is an additional event in the case, even if there is no additional substantive submission from a party. The Panel rejected Judge Perez's interpretation of the statute as neither credible nor sincere. The Panel also found that Judge Perez was familiar with the requirement that all tax court decisions be issued within 3 months from submission. Judge Perez argued that the practice of the court was to obtain oral consent from the parties, not written consent, as required by the statute. The Panel concluded that the statute was not ambiguous, that Judge Perez did not obtain the necessary written consent, and that there was no other valid reason for his delay in issuing decisions.[3]

The Board presented evidence for 11 cases in which it contended that Judge Perez was late in issuing decisions in violation of Minn.Stat. § 271.20. The Panel found that, in 10 of these cases, Judge Perez failed to make decisions in accordance with the statute.[4] In five of these cases, the Panel found that Judge Perez falsely stated the date the case had been submitted for decision in his written decision.

Based on these facts, the Panel concluded that the Board proved by clear and convincing evidence that Judge Perez failed to issue timely decisions in violation of Minn.Stat. § 271.20. The Panel concluded that this conduct violated Rules 1.1[5] and 1.2[6] of the Code of Judicial Conduct and Canons 2A[7] and 3A(1)[8] of the 2008 Code of Judicial Conduct.

Regarding Count I, the Panel found that Judge Perez falsely certified that he had

---

3. Before our court, Judge Perez did not argue that the statutory deadline in Minn.Stat. § 271.20 is extended any time there is an additional event in the case. In fact, Judge Perez admitted in his briefs that in 10 cases over the course of 16 years he issued decisions more than 3 months after they were submitted to him.

4. The Panel found that Judge Perez's decision was timely in one of the cases on which the Board presented evidence. The Board has not challenged this finding.

5. Rule 1.1 of the Code of Judicial Conduct requires "[a] judge [to] comply with the law, including the Code of Judicial Conduct."

6. Rule 1.2 of the Code of Judicial Conduct states that "[a] judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety."

7. Canon 2A of the 2008 Code of Judicial Conduct stated that "[a] judge shall respect and comply with the law and act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

8. Canon 3A(1) of the 2008 Code of Judicial Conduct stated that "[a] judge shall hear and decide promptly, efficiently and fairly matters assigned to the judge except those in which disqualification is required."

no cases pending longer than 3 months after submission when Judge Perez submitted biweekly timesheets during his tenure on the tax court bench. Judge Perez submitted timesheets by hand until December 2004. The handwritten entry book was stamped with "[t]his is to certify I am in compliance with Minn.Stat. § 271.20." Judge Perez started electronic reporting in December 2004, but the Panel found that he knew by submitting his timesheets that he was certifying that he was in compliance with Minn.Stat. § 271.20. Judge Perez continued to submit timesheets even when his decisions were overdue. The Panel found that Judge Perez knew that some of his certifications were false and that he should have known that all his certifications were inaccurate.

The Panel did not find a specific number of false certifications; rather, it concluded that Judge Perez made a "substantial number of false certifications over an extended period of time."[9] Based on these facts, the Panel concluded that the Board proved that Judge Perez violated Rules 1.1 and 1.2 of the Code of Judicial Conduct, and Canon 2A of the 2008 Code of Judicial Conduct.

The Panel also found that the Board did not prove Counts II and III. With respect to Count II, the Panel found that the Board did not prove that Judge Perez was unavailable to decide cases assigned to him or that came before the tax court. And with respect to Count III, the Panel found that the Board did not prove that Judge Perez failed to be fully cooperative, candid, and honest with the Board. The Board does not contest the findings as to Counts II and III.

As discipline for his misconduct, the Panel recommended that Judge Perez be censured, suspended without pay from his position as a judge for 9 months, prohibited from serving as chief judge for the remainder of his term, and directed to limit participation in professional organizations and submit monthly status reports for each case pending before him. This appeal follows. *See* Rule 14, RBJS (discussing appeal following panel proceedings).

## II.

We first address Judge Perez's motion to dismiss. Judge Perez argues that the entire proceeding is moot and should be dismissed because he is no longer a tax court judge. We disagree with Judge Perez that the matter is moot.

■ A case is moot if the court is unable to grant effective relief. *Kahn v. Griffin,* 701 N.W.2d 815, 821 (Minn.2005). While we may be unable to impose some of the discipline the Panel recommends because Judge Perez is no longer a judge, Judge Perez concedes that some of the discipline recommended, such as a public censure, may still be imposed. Because we are able to grant relief by imposing discipline, we hold that the case is not moot. We therefore deny Judge Perez's motion to dismiss.

## III.

■ We turn next to the question of whether the Board proved that Judge Perez committed misconduct. Under Rule 4(a)(6), RBJS, "[c]onduct that constitutes a

---

9. The Board suggests that there were 101 false certifications. Because the Panel's finding that Judge Perez made a "substantial number" of false certifications is sufficient to allow us to make a decision in this case, we decline the Board's invitation to engage in further fact-finding on the number of false certifications. *See* Rule 14(c), RBJS (authorizing the court to refer a judicial disciplinary case back to the hearing panel for additional fact-finding).

violation of the Code of Judicial Conduct" is grounds for judicial discipline. The Board has the burden of proving by clear and convincing evidence that a judge has committed misconduct. Rule 10(b)(2), RBJS. Clear and convincing evidence means that "the truth of the facts asserted is highly probable." *In re Karasov*, 805 N.W.2d 255, 263 (Minn.2011) (citation omitted) (internal quotation marks omitted).

■ We make an independent assessment of whether the Board has proven that a judge violated a provision of the Code of Judicial Conduct. *Id.; see also* Rule 14(e), RBJS. In so doing, we "giv[e] deference to the facts" found by the Panel. Rule 14(e), RBJS. Accordingly, we will defer to the Panel's factual findings unless they are clearly erroneous. *In re Karasov*, 805 N.W.2d at 263–64.

■ The parties do not dispute the vast majority of the factual findings made by the Panel.[10] Our careful review of the record confirms that the evidence amply supports the Panel's findings that Judge Perez committed misconduct and that the findings are not clearly erroneous. We agree with the Panel that Judge Perez's misconduct was prejudicial to the administration of justice and brings the judicial office into disrepute. We also agree that by not deciding cases in a timely manner,

falsely certifying that he had complied with the timeliness requirements for his decisions, and falsely representing deadlines in court opinions, Judge Perez violated Minn.Stat. § 271.20, Rules 1.1. and 1.2 of the Code of Judicial Conduct, and Canons 2A and 3A(1) of the 2008 Code of Judicial Conduct.

## IV.

■ Having concluded that Judge Perez committed misconduct, we turn to the question of the appropriate discipline to impose. Under Rule 14(e), RBJS, we may direct "such discipline or other action as [we find] just and proper." When we determine appropriate sanctions, we are "guided by the principle that the purpose of judicial discipline is not to punish, but 'to protect the public by [ensuring] the integrity of the judicial system.'" *In re Ginsberg*, 690 N.W.2d 539, 548 (Minn.2004) (quoting *In re Miera*, 426 N.W.2d 850, 858 (Minn.1988)). We act "not to punish the wrongdoer but to restore public confidence in the system and its officers." *In re Miera*, 426 N.W.2d at 858. The disciplinary sanction must be "'designed to announce our recognition that misconduct has occurred, and our resolve that similar conduct by this or other judges will not be condoned in the future.'" *In re Karasov*, 805 N.W.2d at 275 (quoting *In re Miera*,

---

**10.** At oral argument, Judge Perez's counsel stated that Judge Perez contested two specific factual findings made by the Panel. Judge Perez's counsel stated that he was contesting the Panel's findings that (1) Judge Perez's timeliness problems started in 1998 and (2) Judge Perez falsely stated in one of his opinions that the parties asked for a stay during a post-trial conference call. With respect to the first disputed finding, Judge Perez did not argue in his briefs that the Panel's finding that his timeliness issues began in 1998 was clearly erroneous and so this argument is waived. *See In re Application of Olson for Payment of Serv.*, 648 N.W.2d 226, 228 (Minn.

2002) ("It is axiomatic that issues not 'argued' in the briefs are deemed waived on appeal."). With respect to the second disputed finding, Judge Perez argued for the first time in his reply brief that the Panel's finding about a false statement in one of his decisions was clearly erroneous and so this argument is also waived. *See Moorhead Econ. Dev. Auth. v. Anda*, 789 N.W.2d 860, 887 (Minn.2010) ("[W]e have declined to consider issues raised for the first time in a reply brief ..."). But even if these two challenges were properly before us, we would reject them because there is support in the record for each of the findings.

426 N.W.2d at 858). We afford no particular deference to the Panel or Board's recommended sanctions and independently review the record to determine the appropriate sanction, if any, to impose. *In re Blakely,* 772 N.W.2d 516, 523 (Minn.2009).

Judge Perez argues that we should not discipline him. He contends that his removal from office due to the Minnesota Senate's refusal to confirm him and the news media coverage of the Panel's findings constitute sufficient discipline for his misconduct.[11] The Board contends that discipline is warranted and requests that we remove Judge Perez from office, which would make him ineligible to serve as a judge again. *See* Minn.Stat. § 490A.02, subd. 6 (2012) ("A judge removed by the Supreme Court is ineligible for any future service in a judicial office.").[12]

We agree with the Board that discipline is warranted in this case. Judge Perez undermined the integrity of the judiciary because he did not comply with Minnesota law. Judge Perez failed to timely release opinions, with delay of over a year in some cases. His misconduct severely undermined the people's trust and confidence in the judicial process. Judge Perez also falsified dates in his orders so it appeared he was complying with the law. Furthermore, by making a substantial number of false statements in order to be paid, Judge Perez seriously undermined the integrity of the judicial system. The public at large, and in particular, those appearing before the tax court could have reason to question whether a judge who fails to comply with Minnesota law and makes a substantial number of false statements will respect and follow the law. *See In re Karasov,* 805 N.W.2d at 276; *In re Ginsberg,* 690 N.W.2d at 549–50.

Judge Perez argues that if we are inclined to impose discipline, he is entitled to mitigation. Specifically, Judge Perez contends that he is entitled to mitigation because since January 2012, when he responded to the Board's inquiry, he issued all decisions in cases assigned to him within the 3–month deadline in Minn. Stat. § 271.20 and he did not make any requests for extensions. We disagree with Judge Perez that his compliance with the law mitigates his misconduct. Judges must conform to a higher standard of conduct than is expected of lawyers or other persons in society. *In re Winton,* 350 N.W.2d 337, 340 (Minn.1984). Rule 1.1 of the Code of Judicial Conduct requires compliance with the law. Judge Perez is not entitled to mitigation because he managed to follow the law after the Board notified him of the complaint.

Even though Judge Perez is not entitled to mitigation, we conclude that this is not a case in which the judge should be removed from office. Assuming that we have the authority to remove a judge from the tax court who is no longer serving as a judge, the type of misconduct at issue in this case is not the type of conduct that has warranted removal in the past. We have removed only three judges from the bench since 1972. *See In re Ginsberg,* 690 N.W.2d at 550; *In re Winton,* 350 N.W.2d at 344; *In re Gillard,* 271 N.W.2d 785, 805

---

11. Judge Perez also contends that the reporting requirement and the prohibition on serving as chief judge violate the separation of powers by imposing duties on an executive-branch agency. Because the Board concedes that the Panel's employment-condition recommendations may no longer be imposed, we need not address this argument.

12. In its brief, the Board requested in the alternative that we impose a civil penalty on Judge Perez for his misconduct. But in its reply brief, the Board withdrew this request. We therefore do not consider the question of a civil penalty further.

(Minn.1978). These cases all involved "repeated instances of serious misconduct committed over lengthy periods of time and involving multiple victims." *In re Karasov*, 805 N.W.2d at 276. Judge Ginsberg committed serious misconduct as a judge, including improper dismissal of cases, retaliation, and making a criminal defendant choose which one of three deputies to fight in chambers; as well as two criminal acts, including an assault on a 14–year–old boy. *In re Ginsberg*, 690 N.W.2d at 545–47. Judge Winton solicited and engaged in prostitution with numerous youths. *In re Winton*, 350 N.W.2d at 338. Judge Gillard committed numerous grave violations of the rules of professional responsibility before becoming a judge, causing serious harm to more than a dozen former clients. *In re Gillard*, 271 N.W.2d at 802–05. Judge Perez's conduct, while severe and egregious misconduct, does not rise to the level of misconduct for which we have removed judges from office.

A factually analogous case, *In re Anderson*, 312 Minn. 442, 252 N.W.2d 592 (1977), supports our conclusion that removal is not warranted here. Judge Anderson was a district court judge who violated a statute similar to Minn.Stat. § 271.20, the statute Judge Perez violated. 312 Minn. at 445, 252 N.W.2d at 593. The statute at issue in *Anderson* required that all motions and matters submitted to a judge for decision be decided within 90 days. Minn. Stat. § 546.27 (1976).[13] Judge Anderson had 12 outstanding matters, one of which was at least 3 years overdue. 312 Minn. at 445, 252 N.W.2d at 593. Judge Anderson also violated the statute by falsely certifying that he had no outstanding orders past 90 days in order to receive his paycheck. *Id.* at 446, 252 N.W.2d at 593–94. In addition to violating the statute, Judge Anderson approached two practicing attorneys in his court for a $1,000 loan from each attorney and was still indebted to them when they later appeared before him in litigation. *Id.* at 445–46, 252 N.W.2d at 593–94. Judge Anderson further provided false information to the Board during the course of its investigation. *Id.* at 445–46, 252 N.W.2d at 593–94. We did not remove Judge Anderson for his misconduct. Rather, we suspended Judge Anderson for 3 months without pay and publicly censured him. *Id.* at 448–49, 252 N.W.2d at 595. *Anderson* therefore confirms that removal is not appropriate in this case.

■ After a careful review, we conclude the following discipline is warranted: public censure, referral to the Wisconsin Office of Lawyer Regulation, and supervision by this court if Judge Perez files an application to be a member of the Minnesota Bar in the future. We reach this conclusion because this case involves very serious misconduct that undermines the integrity of the judicial system and the public's trust and confidence. At the same time, this case involves unique factual circumstances because Judge Perez is no longer serving as a judge on the tax court, he is not admitted to practice law in Minnesota, and he is a former executive-branch judge. The discipline we impose protects the integrity of the judicial system and should help restore the public's confidence in that system and its officers.

13. The statute, Minn.Stat. § 546.27 (1976), provided in part:
All questions of fact and law, and all motions and matters submitted to a judge for his decision, shall be disposed of and his decision filed with the clerk within 90 days after such submission, unless sickness or casualty shall prevent, or the time be extended by written consent of the parties. No part of the salary of any judge shall be paid unless the voucher therefor be accompanied by a certificate of the judge that he has fully complied with the requirements of this section.

Judge Perez is hereby censured for judicial misconduct. The Board on Judicial Standards is ordered to provide a copy of the complaint, the Panel's findings, and this court's opinion to the Wisconsin Office of Lawyer Regulation. The Board must cooperate and provide information to the Wisconsin Office of Lawyer Regulation consistent with the Rules of Board on Judicial Standards. Judge Perez is ordered to give notice to our court of any application for admission to the Minnesota Bar, and this court will supervise the Board of Law Examiners' investigation into Judge Perez's character and fitness under Rule 5, Rules for Admission to the Bar.

LILLEHAUG, J., took no part in the consideration or decision of this case.